## AUSTIN v. UNITED STATES.
### No. 46132.

United States Court of Claims.

Dec. 6, 1948.

Mahlon C. Masterson, of Washington, D. C. (Ansell & Ansell, of Washington, D. C., on the briefs), for plaintiff.

Mary K. Fagan, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

JONES, Chief Judge.

This is a suit for the difference between the pay which plaintiff received as a lieutenant on the retired list, United States Coast Guard, between July 1, 1938, and April 9, 1941, and the pay of a lieutenant commander on the retired list for the same period which he claims he was entitled to receive pursuant to the Act of July 30, 1937, 50 Stat. 550, 14 U.S.C.A. § 167c. The single issue is whether the disability for which plaintiff was retired originated in line of duty between the dates of April 6, 1917, and March 3, 1921.

The act referred to provides:

"That notwithstanding the provisions of section 1, as amended, of the Act of June 21, 1930 (46 Stat. 793, ch. 563), any officer of the Coast Guard who has been retired since September 3, 1921, but prior to March 4, 1925, by reason of physical disability which originated in line of duty at any time between April 6, 1917, and March 3, 1921, inclusive, while holding higher temporary rank in the Coast Guard, shall receive from the date of the approval of this Act the pay of the rank he holds on the retired list."

It is conceded that plaintiff was retired on July 10, 1922, for physical disability incurred in line of duty. The retirement was based upon the findings and recommendations of a Coast Guard Retiring Board to the effect that plaintiff was incapacitated for active service by reason of the fact that the pulmonary tuberculosis, even if then arrested, was likely to become active again if he were exposed to any duty on any ship or station. It was found that cholecystitis would undoubtedly recur, but that the tuberculosis of the lungs made an operation on the gall bladder inadvisable, and that his incapacity was an incident of service.

On July 1, 1918, plaintiff, while holding the permanent rank of a lieutenant in the Coast Guard was temporarily appointed a lieutenant commander under the provisions of the Act of July 1, 1918, 40 Stat. 733, and reverted to his permanent rank of lieutenant on September 3, 1921, which rank he was holding on July 10, 1922, at the time of his retirement.

On May 23, 1915, plaintiff was taken ill aboard ship in the Bering Sea while serving as executive officer on a Coast Guard cutter. He was treated by the ship's surgeon who diagnosed his illness as "pleurisy with effusions, possibly tubercular." He was admitted to the Marine Hospital at Port Townsend, Washington, on June 16, from which hospital he was discharged on August 18, as recovered. The diagnosis made at the hospital was "pleurisy, left side." The observations and examination at the hospital did not confirm the suspicions of the Coast Guard cutter's surgeon that the pleural effusions were possibly tubercular. Plaintiff was returned to active duty and on October 19, 1915, was assigned to command the Arcata.

There is no evidence of further illness until the plaintiff was admitted to the Marine Hospital at Seattle, Washington, January 8, 1917, on a complaint of chills and fever and generalized aching. He was examined thoroughly in relation to the condition of his lungs and his illness diagnosed as "influenza, pleurisy." There was no finding of tuberculosis and a sputum examination was negative. He was discharged as recovered on January 23, 1917. On February 9, 1918, he was assigned to duty as navigator on the Columbia, engaged in the convoying of ships between New York City and Brest. He continued on active sea duty until November 7, 1918, after which he commanded a ship which made a trip from the east coast of the United States through the Panama Canal to the west coast, and was there assigned to the command of a Coast Guard cutter in which duty he continued without further evidence of illness until 1921.

On February 11, 1921, while in command of the cutter with headquarters at Port Angeles, Washington, he was stricken with a severe illness while walking from the ship toward his home, the symptoms being severe pains in the abdominal region. The Marine Hospital doctor who was also the medical officer of his ship was called and visited him at a nearby drug store. The doctor sent him to his home in an automobile, where he remained under the care of the doctor for 12 days. The doctor diagnosed his illness as acute cholecystitis, an inflammation of the gall bladder. He was then ordered to the Marine Hospital at Seattle and was there examined for abdominal ailments and also for tuberculosis. The attending specialist in surgery diagnosed his abdominal trouble as chronic appendicitis. The chief of the tubercular section of the hospital after careful examination reported "clinical tuberculosis not found." The X-ray report, however, indicated an impairment of the lungs, suggesting tubercular origin. Plaintiff was

discharged February 26, 1921, as improved, with the diagnosis of

1. Pleurisy, chronic fibrous.
   Other diseases: Gastritis, Acute catarrhal (additional diagnosis).

A report on such illness was transmitted to the Coast Guard Headquarters and plaintiff was granted three months' sick leave, beginning February 12, 1921. On May 2, 1921, plaintiff reported for active duty and served at Oakland, California, until February 1922. His orders were to report to the Inspector of Hulls for duty in connection with Coast Guard Cutter 38, and to serve on board such cutter when it should be commissioned.

On January 26, 1922, plaintiff suffered an acute attack of abdominal trouble with symptoms similar to those suffered in 1921. He consulted a physician who certified that plaintiff was suffering from ulcers of the stomach and was in need of hospital treatment. In February 1922 he reported to the United States Marine Hospital at San Francisco where an exhaustive physical examination was made over a period of observation continuing into April. On March 2, 1922, plaintiff requested that he be retired from active duty by reason of physical disability. A Coast Guard Retiring Board was ordered to convene and examine plaintiff, with the result heretofore indicated.

Plaintiff was reassigned to active duty in 1926 and was advanced to the rank of lieutenant commander on the retired list under the provisions of the Act of June 21, 1930, 46 Stat. 793. He continued on active duty until November 1, 1934, when he resumed retired status. On April 8, 1941, plaintiff was assigned to active duty with the rank and pay of a lieutenant commander. In the meantime, on March 11, 1941, the plaintiff filed a claim with the Commandant of the United States Coast Guard claiming that he was entitled under the provisions of the Act of July 30, 1937, to the retired pay of a lieutenant commander from July 30, 1937. The claim was rejected by the General Accounting Office to which it had been referred for direct action.

If the tuberculosis originated between April 6, 1917 and March 3, 1921, plaintiff is entitled to recover for the period between July 29, 1938 and April 7, 1941, the difference between the retired pay of a lieutenant and the retired pay of a lieutenant commander, with his length of service, that difference being $45.31 per month.

We think it is clear—in fact, it is practically conceded—that the tuberculosis originated prior to March 3, 1921. The primary contention of the defendant is that it originated prior to April 6, 1917, probably as early as 1915.

The only medical testimony in the case was by two members of the Retiring Board, both of whom examined plaintiff at the time of the findings and recommendations of such board. Dr. King, after examining the hospital records and reports of the X-rays which were made in 1922, testified that in his opinion as a medical expert and after the examination, the tuberculosis originated as much as five years prior to March 3, 1921, and probably as early as 1915.

On the other hand, Dr. Jones, who was also a member of the Board, and who had examined plaintiff at the time of retirement, testified that in his opinion as a medical expert, the tuberculosis originated more than a year prior to March 3, 1921, but that in effect it was impossible to tell definitely from that type of examination with the facilities then available, whether the tubercular condition originated more than one or two years prior thereto.

We are somewhat at sea like plaintiff was during a good portion of his service. Here are two well-trained medical experts. Both of them were members of the Board that recommended plaintiff's retirement. Neither of them had seen him prior to the time of his examination in July 1922. The case largely turns on the weight to be given the respective expert opinions of these two medical witnesses in the light of previous examinations and circumstances connected with the case history. One of these witnesses testified that in his opinion the tubercular condition originated more than five years prior to March 3, 1921; the other, who had access to the same case history, the same examination and the same facilities, with the exception of some of

the hospital records, testified that in his opinion it was impossible to tell definitely that it existed more than a year before March 3, 1921.

Considering the events and circumstances as a whole, we believe that tuberculosis existed prior to March 3, 1921, but are not convinced that it was incurred prior to April 6, 1917.

Against the opinion of Dr. King is the fact that when plaintiff suffered from pleurisy in 1915, the ship's surgeon had reported that it was possibly due to tuberculosis and had sent him to the Marine Hospital for observation and treatment. At the Marine Hospital observation and examination with special inquiry as to tuberculosis showed no tuberculosis to be present. Active tuberculosis unfits a man for sea duty, yet after two months of observation and treatment he was discharged as recovered, no tuberculosis was found, and he was promptly assigned to the command of a ship. Later he was assigned as a navigator between New York and Brest; still later to the Bureau of Navigation, Navy Department, Washington, D. C., and later to the command of a ship through the Panama Canal from the east to the west coast and then to a Coast Guard cutter. In 1917 he was in the Marine Hospital in Seattle with influenza, but there was no finding of tuberculosis and a sputum examination was negative for tubercle bacilli. After a few days he was discharged as recovered and it was after this discharge that he was assigned to the Columbia. There was no further record of any illness until February 11, 1921, when he was stricken with an acute attack of cholecystitis, whereupon he was put to bed for 12 days at his home in care of the medical officer of his ship and then moved to the Marine Hospital at Seattle, where he was again examined and there was a diagnosis of no tuberculosis.

In view of the testimony of Drs. King and Jones with reference to X-rays, it is not impossible that the tuberculosis might have been starting about that time, or that it had been under way for some little time, but in such a mild and unadvanced stage that it was not detected.

We do not give serious consideration to the statement of plaintiff that he considered May 1915 as the date of the origin of the tuberculosis for which he was retired. He probably made this statement on the basis of the report of the ship's surgeon who attended him in the Bering Sea. At any rate, not being a medical expert he was not in position to know the exact nature of his illness, and the thorough hospital examination given him soon thereafter did not indicate a tubercular condition.

We find that the physical disability originated in line of duty between April 6, 1917 and March 3, 1921.

Plaintiff is entitled to recover the sum of $1,463.51. It is so ordered.